IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MARY BENTZ, | ) | CASE NO. 1:17 CV 2023 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| | ) | **MEMORANDUM OPINION &** |
| Defendant. | ) | **ORDER** |

## Introduction

Before me[1] is an action by Mary Gene Bentz under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF No. 13. The parties have consented to my exercise of jurisdiction.
[2] ECF No. 1.
[3] ECF No. 9.
[4] ECF No. 10.
[5] ECF No. 5.
[6] ECF No. 12.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Bentz, who was 50 years old at the time of the administrative hearing,[11] has a high school education and took a nine-month course in medical assisting.[12] Her past relevant employment history includes work as a cashier.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Bentz had the following severe impairments: polyarthralgia; hypocomplementemic urticarial vasculitis; obesity; bipolar disorder; anxiety-related disorder; and borderline personality disorder.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ found Bentz had the residual functional capacity ("RFC") to perform light work as defined in the regulations with additional limitations.[15] With respect to her mental impairments, the ALJ limited Bentz to "routine tasks with no fast-paced work, no strict

---

[7] ECF No. 23 (Commissioner's brief); ECF No. 18 (Bentz's brief).
[8] ECF No. 23, Attachment 1 (Commissioner's charts); ECF No. 18, Attachment 1 (Bentz's charts).
[9] ECF No. 17 (Bentz's fact sheet).
[10] ECF No. 25.
[11] ECF No. 17 at 1.
[12] *Id.*
[13] ECF No. 10, Transcript ("Tr.") at 19.
[14] *Id.* at 13.
[15] *Id.* at 15.

production quotas, and minimal or infrequent changes in the work setting."[16] He also limited Bentz to frequent interaction with the public, coworkers, and supervisors.[17]

The ALJ decided that this residual functional capacity precluded Bentz from performing her past relevant work.[18] Based on testimony by the vocational expert at the hearing, the ALJ determined that a significant number of jobs existed nationally that Bentz could perform.[19] The ALJ, therefore, found Bentz not under a disability.[20]

**B.    Issues on judicial review**

Bentz asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Bentz presents the following issues for judicial review:

- Whether the ALJ properly evaluated and weighed the opinion of Bentz's treating psychiatrist.

- Whether substantial evidence supports the ALJ's determination that Bentz can perform light work activity.[21]

For the reasons that follow, the ALJ's finding of no disability is affirmed in part and reversed and remanded for further administrative proceedings in part.

---

[16] *Id.*
[17] *Id.*
[18] *Id.* at 18.
[19] *Id.* at 19.
[20] *Id.* at 20.
[21] ECF No. 18 at 1.

3

# Analysis

**A. Standards of review**

*1. Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[22]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[23] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[24]

---

[22] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).
[23] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).
[24] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2. *Treating physician rule and good reasons requirement*

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[25] emphasized that the regulations require two distinct analyses in evaluating the opinions of treating sources.[26] The *Gayheart* decision directed that the ALJ must first determine if the opinion must receive controlling weight as well-supported by clinical and laboratory techniques and as not inconsistent with other evidence in the administrative record.[27] If the ALJ decides not to give the opinion controlling weight, then a rebuttable presumption exists that the treating physician's opinion should receive great deference.[28] This presumption may be rebutted by application of the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (3)-(6).[29] The Court cautioned against collapsing these two distinct analyses into one.[30]

Despite the seemingly clear mandate of *Gayheart*, the Sixth Circuit in later decisions has adopted an approach that permits these two separate analyses to be merged into one so long as the ALJ states "good reasons" for the weight assigned applying the regulatory factors governing each analytical step.[31] Also, despite the reality that a

---

[25] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).
[26] *Id.* at 375-76.
[27] *Id.* at 376.
[28] *Rogers*, 486 F.3d at 242.
[29] *Gayheart*, 710 F.3d at 376.
[30] *Id.*
[31] *E.g., Biestek v. Comm. of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017).

5

unified statement of these "good reasons" greatly enhances meaningful judicial review,[32] some authority exists for looking outside the unified statement for analysis of the weight assigned to a treating source's opinion.[33] Going beyond the reasons stated in the unified statement takes the Court in the hazy gray area where the sirens of *de novo* review and *post hoc* rationalization reside. A reviewing district court must avoid both. An ALJ cannot avoid reversal by merely citing exhibits in the record that might support her findings without discussing the content of those exhibits and explaining how that content provides support.[34] Nor can counsel for the Commissioner save a decision from reversal by citing to evidence in the record not cited and adequately discussed by the ALJ.[35] It is for the ALJ, not the court or Commissioner's counsel, to "build a logical bridge from the evidence to the conclusion."[36] "Put simply, . . . there must be some effort . . . to explain why it is the treating physician's conclusion that gets the short end of the stick."[37]

**B.  Application of standards**

*1.  Exertional limitations*

Bentz argues that the ALJ's RFC determination is not supported by substantial

---

[32] *Smith v. Comm. of Soc. Sec.*, No. 5:13cv870, 2104WL1944247, **7-8 (N.D. Ohio May 14, 2014).
[33] *See, e.g., Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528 (6th Cir. 2001).
[34] *Smith v. Comm'r of Soc. Sec.*, No. 5:13 CV 870, 2104 WL 1944247, at *7 (N.D. Ohio May 14, 2014).
[35] *Sharp v. Comm'r of Soc. Sec.*, No. 1:14-cv-523, 2015 WL 3545251 (S.D. Ohio June 4, 2015) (citing *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 524 (6th Cir. 2014)), *report and recommendation adopted by* 2015 WL 3952331 (S.D. Ohio June 29, 2015).
[36] *Hale v. Colvin*, No. 3:13cv182, 2014 WL 868124, *8 (S.D. Ohio March 5, 2014).
[37] *Friend* v. *Comm'r of Soc. Sec.*, 375 F. App'x 543, 552 (6th Cir. 2010).

evidence and "conflicts with the evidence regarding [her] limited ability to stand and walk."[38] As the Commissioner notes, the "crux" of Bentz's argument is that the ALJ's limiting Bentz to four hours of standing and walking is "inconsistent with a full range of light work."[39] But as the Commissioner correctly states, the ALJ only found Bentz capable of a *reduced* range of light work.[40] And as Bentz concedes,[41] the ALJ's RFC assessment regarding Bentz's ability to stand and walk is consistent with the state agency reviewing physician's determination on reconsideration.[42] The fact that one state agency physician initially found Bentz capable of sedentary work is of no consequence. It is not for this court to reweigh the evidence. The ALJ's RFC determination as to Bentz's exertional limitations is supported by substantial evidence and must be affirmed.

*2.    Treating source opinion and mental limitations*

Bentz maintains that the ALJ erred by failing to "assign appropriate weight to the opinion of Dr. Macknin, [Bentz's] treating psychiatrist, and thus violated the treating physician rule."[43] In her brief, Bentz devotes much of her argument to asserting that Dr. Macknin should have been recognized as a treating source and her opinion evaluated as such.[44] But she was. A fair reading of the ALJ's decision shows that the ALJ considered

---

[38] ECF No. 18 at 13.
[39] ECF No. 23 at 15.
[40] Tr. at 15.
[41] ECF No. 18 at 14.
[42] Tr. at 99.
[43] ECF No. 18 at 9.
[44] *Id.* at 9-11.

7

the joint opinion of Dr. Macknin and certified therapist Mariah Bruening as a treating source opinion.[45]

Bentz's counsel at oral argument stated the real issue is the ALJ's "rejection" of the treating source opinion with no explanation of the basis for the rejection. In addition, counsel argued that the ALJ "cherry picked" the record evidence, particularly Bentz's activities of daily living.

The ALJ assigned "[l]imited weight" to the opinion of Dr. Macknin and Ms. Bruening, supporting his finding as follows:

> The statement opined the claimant to be generally unable to sustain attention and concentration, tolerate stress, interact appropriately with others, and complete a normal workday or workweek. The record does not generally support the claimant to be thus limited. The statement indicated the claimant has "severe anxiety and panic when leaving the home" but this is generally inconsistent with the claimant's testimony and her demeanor during the medical consultative examination (Exhibits 3F; 6F/8, 15-68).[46]

Bentz claims that this "conclusory/generalized analysis" precludes meaningful judicial review.[47] The Commissioner urges the Court to adopt a holistic approach to reviewing the ALJ's decision, which, according to the Commissioner, shows that the ALJ "reasonably discussed the record evidence that was inconsistent with [Dr. Macknin's] opinions."[48]

---

[45] Tr. at 18.
[46] *Id.*
[47] ECF No. 18 at 13.
[48] ECF No. 23 at 11-12.

8

While the ALJ discussed record evidence at length regarding Bentz's mental impairments elsewhere in the decision, the ALJ myopically focused only on the evidence that supported his conclusions.[49] While he mentioned Bentz's hospitalization from May 30, 2014, to June 3, 2014, for suicidal and homicidal ideation,[50] he omitted any discussion of the multiple references in the treatment notes to ongoing suicidal thoughts and ideation.[51] He likewise omitted the corroboration of those notes provided by Bentz's hearing testimony that she had suicidal thoughts once or twice a month.[52]

Further, Dr. Macknin and Ms. Bruening opined that Bentz would be unable to complete a normal work day or work week,[53] which Bentz herself again corroborated by testifying that she cannot get out of bed three to four times a week because of her depression.[54] Even the ALJ acknowledged at the hearing that he would need to look at "sustainability of work" back to Bentz's onset date.[55] And yet none of the contradictory evidence in the record made its way into the ALJ's opinion.[56]

---

[49] Tr. at 17-18.
[50] *Id.*
[51] *See, e.g., id.* at 381, 402, 407-08, 456, 462, 464, 482, and 484.
[52] *Id.* at 54.
[53] *Id.* at 374.
[54] *Id.* at 60.
[55] *Id.* at 70-71.
[56] *Id.* at 17-18.

9

This is hardly a clear cut case, and the evidence is mixed. But the ALJ may not ignore contrary lines of evidence in his analysis.[57] This is true even where there is enough evidence in the record to support the decision.[58] Therefore, remand is required.

**Conclusion**

Substantial evidence supports the finding of the Commissioner regarding Bentz's exertional limitations, but the Commissioner's decision regarding Bentz's mental limitations lacks substantial evidence. Therefore, the decision of the Commissioner denying Bentz disability insurance benefits is affirmed in part and reversed and remanded in part. On remand, the ALJ must properly consider and analyze the record evidence regarding Bentz's mental impairments and limitations from the time of her 2014 hospitalization for suicidal and homicidal ideation forward.

IT IS SO ORDERED.

Dated: September 25, 2018                s/ William H. Baughman, Jr.
                                         United States Magistrate Judge

---

[57] *Schrader v. Astrue*, No. 11-13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked.") (citing *Morris v. Sec'y of Health & Human Servs.*, 845 F.2d 326 (6th Cir. 1988)).

[58] *See Watkins v. Comm. of Soc. Sec.*, No. 1:16-cv-2643, 2017 WL 6419350, at *8 (N.D. Ohio Nov. 22, 2017) ("Finally, a district court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [when] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'") (citing and quoting *Fleischer v. Astrue,* 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)), *report and recommendation adopted by* 2017 WL 6389607 (N.D. Ohio Dec. 14, 2017).